George C. Miller (SBN 259905)
*gmiller@shufirm.com*
Joseph M. Mellano (SBN 306472)
*jmellano@shufirm.com*
SHUSTAK REYNOLDS & PARTNERS, P.C.
401 West "A" Street, Suite 2200
San Diego, California 92101
t: (619) 696-9500
f: (800) 868-9350

*Attorneys for Plaintiffs Alicia Sanchez and CIAM LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION**

ALICIA SANCHEZ; CIAM LLC,

Plaintiffs,

v.

JAMES CONAWAY; CONAWAY & CONAWAY, INC.; JCA TAX SOLUTIONS LLC; BRETT ROUNKLES; RM PROPERTY INVESTMENTS, LLC; RANGER MANAGEMENT, LLC; RANGER HOLDINGS LLC; RANGER REAL ESTATE, LLC; RM FUND 2, LLC; NORTHWOOD APARTMENTS, LLC,

Defendants.

Case No. 8:25-cv-00641

**COMPLAINT**

## INTRODUCTION

1. This is an investment fraud and elder abuse case. Defendants defrauded Plaintiffs out of hundreds of thousands of dollars by selling them a sham real estate investment. Defendants made false promises and concealed critical facts to convince Plaintiffs to invest and assuage their subsequent concerns about that investment. As detailed below, through a series of false representations, Defendants convinced Sanchez, a retired, unsophisticated investor, to buy three fourplexes in Kansas City, Missouri, directly from Defendants for $1.26 million. Plaintiffs made a downpayment of approximately $286,743.31, and Defendants purported to finance the balance of the purchase price. After Plaintiffs bought the properties, however, the fourplexes generated virtually no income, contrary to Defendants' express promises and representations. Despite Defendants' repeated, ongoing promises, guarantees, and assurances the properties would be profitable, Defendants recently brought a civil action in Missouri seeking repayment of the full loan amount of nearly $1 million purportedly due. Plaintiffs have been substantially damaged by Defendants' fraud and misconduct, leaving them no choice but to bring this action. Plaintiffs are entitled to compensatory, treble, and punitive damages, penalties, attorneys' fees, restitution, disgorgement, an accounting, and other equitable relief, as detailed herein.

## PARTIES

2. Plaintiff Alicia Sanchez is and, at all relevant times, was an individual retiree residing in Vista, California, and a California citizen. As of this filing, Sanchez is 73 years old. As of Plaintiffs' purchase of the Northwood Fourplexes in December 2021, Sanchez was 69 years old. At all relevant times, Sanchez was the sole member of Plaintiff CIAM LLC ("CIAM"), which she formed for purposes of the subject investments.

3. Plaintiff CIAM LLC is a limited liability company organized under the laws of the State of Missouri, with its principal place of business in Vista, California. Sanchez is and, at all relevant times, was CIAM's sole member. Sanchez organized CIAM to purchase and hold real estate investments, including the Northwood Fourplexes. CIAM presently is in good standing with the State of Missouri.

4. Defendant James Conaway is and, at all relevant times, was an individual residing in Orange County, California, and a California citizen. Conaway is a financial services professional and former securities broker and investment advisor representative. On information and belief, Conaway is the owner and managing member of Defendant JCA Tax Solutions LLC, and a controlling shareholder of Defendant Conaway & Conaway, Inc.

5. Defendant JCA Tax Solutions LLC ("JCA Solutions") is a limited liability company organized under the laws of the State of California, with its principal place of business in Orange County, California. On information and belief, Conaway is and, at all relevant times, was JCA Solutions' owner and managing member and acted in such capacities. On further information and belief, JCA Solutions is, and at all relevant times, was one of the two entities through which Conaway provides financial services, including securities, investment, insurance, and tax services, to customers and clients. JCA Solutions currently is in good standing with the State of California.

6. Defendant Conaway & Conaway, Inc. ("C&C") is a corporation formed under the laws of the State of California, with its principal place of business in Orange County, California. On information and belief, Conaway is and, at all relevant times, was a principal and controlling shareholder of C&C and acted in such capacities. On further information and belief, C&C is, and at all relevant times, was one of the two entities through which Conaway provides financial services, including securities, investment, insurance, and tax services, to customers and clients. C&C currently is in good standing with the State of California.

7. On information and belief, Defendant Brett Rounkles is and, at all relevant times, was an individual residing in Platte County, Missouri, and a Missouri citizen. On further information and belief, Rounkles is and, at all relevant times, was the sole member of Defendants Northwood Apartments, LLC ("NWA"), RM Property Investments, LLC ("RMPI"), Ranger Real Estate, LLC ("RRE"), Ranger Holdings LLC ("RH"), Ranger Management, LLC ("Ranger Management"), and RM Fund 2, LLC ("RMF2"), and acted in such capacities.

8. Defendants Northwood Apartments, LLC, RM Property Investments, LLC, Ranger Real Estate, LLC, Ranger Holdings LLC, Ranger Management, LLC, and RM Fund 2, LLC, which do business as Vibrant Property Investments, are limited liability companies organized under the laws of the State of Missouri. On information and belief, the principal place of business of each of these entities is Lee's Summit, Missouri. Each of these Defendants currently is in good standing with the State of Missouri.

9. At all relevant times, each Defendant acted on behalf, and for the benefit, of each other Defendant. Defendants are and, at all relevant times, were alter egos, control persons, parents, subsidiaries, entities, agents, representatives, employees, co-conspirators of each other and, in committing the misconduct alleged herein, acted within the course and scope of such relationships, and with the consent, instruction, knowledge, and ratification of, and aided and abetted each other. Defendants influenced and governed each other and other unnamed parties with such a degree of unity that the individuality or separateness of each has ceased to exist, and adherence to the fiction of the separate existence of these Defendants would sanction a fraud or promote a miscarriage of justice.

## JURISDICTION

10. This Court has original subject matter jurisdiction as to the First and Third Causes of Action herein because they arise under the laws of the United States. *See* 28 U.S.C. § 1331.

11. This Court has supplemental jurisdiction as to the remaining causes of action because they form part of the same case or controversy as that raised by the First and Third Causes of Action. *See* 28 U.S.C. § 1367.

12. Venue lies here because (i) the relevant events, communications, and transactions, including Defendants' efforts to market and sell the subject investments occurred in this District; (ii) Conaway operates his companies in this district; and (iii) Defendants are subject to nationwide service of process and, therefore, the personal jurisdiction of all District Courts. *See* 28 U.S.C. § 1391(b); 15 U.S.C. § 78aa.

## BACKGROUND

13. Sanchez is a 73-year-old, San Diego-based retiree and grandmother. CIAM is a Missouri entity she organized at Defendants' direction for the sole purpose of purchasing the subject investments. Conaway is an Orange County-based individual who holds himself out as a financial services professional. JCA Solutions and C&C are the California business entities through which Conaway does business. Rounkles is a Missouri-based individual who holds himself out as a real estate entrepreneur. NWA, RMPI, RRE, RH, Ranger Management, and RMF2 (collectively with Rounkles, "Rounkles Defendants") are the Missouri business entities through which Rounkles does business.

14. In late 2021, Defendants sold Plaintiffs three fourplexes ("Northwood Fourplexes") in Platte County, Missouri, for a total sale price of $1.26 million. At Defendants' direction, Plaintiffs made a downpayment of $286,743.31 and executed three promissory notes for the balance of the purchase amount. The Rounkles Defendants offered and sold the investment, issued the loans underlying the promissory notes, and subsequently managed the Northwood Fourplexes for Plaintiffs. The Conaway Defendants promoted the Northwood Fourplexes to Plaintiffs, advised Plaintiffs in connection with the investment, and ultimately brokered the transaction. Upon information and belief, Conaway or his entities received an illegal kickback payment for brokering the sale.

15. Shortly before Plaintiffs bought the Northwood Fourplexes, Plaintiff Sanchez had sold her business—a long-term care facility in northern San Diego County—for approximately $1.5 million. After she sold that business, a family friend introduced her to Conaway to help her reinvest the proceeds of the sale. Her goal was to use investment proceeds to fund her retirement. In Sanchez's initial meetings and calls with him, Conaway stated he was an investment adviser and securities broker, and claimed to have specialized real estate investment experience. Based on his representations, Sanchez hired him as her investment adviser, paying him an upfront engagement fee of $2,500. Thereafter, Conaway started pitching Sanchez real estate investment opportunities, including the Northwood Fourplexes.

16. Unbeknownst to Plaintiffs until recently, Conaway was not licensed as an investment adviser or securities broker, nor were his businesses licensed or registered as broker-dealers or registered investment advisory firms with the Securities and Exchange Commission, Financial Industry Regulatory Authority ("FINRA"), the Department of Real Estate, or any other state or federal governmental agency or self-regulatory organization.

17. Conaway previously had been licensed and registered with the relevant securities industry authorities, but allowed his licenses and registrations to lapse in 2018 after a FINRA investigation revealed he had received more than $450,000 in undisclosed kickback payments for referring clients to investments in distressed Missouri rental properties. Conaway paid a $10,000 fine and received a nine-month suspension for the violations. After serving the suspension, he did not reinstate his registrations, suggesting firms were unwilling to hire him. Before FINRA imposed formal discipline on him, Conaway had been the subject of multiple disputes with customers about their investments. Defendants disclosed none of this to Sanchez. Had Sanchez known this information, she never would have worked with Conaway.

18. Shortly after Sanchez hired him, Conaway suggested she buy the Northwood Fourplexes. He presented the properties as a "special" investment opportunity and assured and guaranteed Sanchez they would yield income and be profitable. He told her they were in excellent condition, and all units were rented. He claimed several other investors were interested in buying the properties, including him and his wife, and told Sanchez she needed to act fast to seize the opportunity. He explained Sanchez would be assuming the existing, interest-only mortgage on the property as part of the deal, and guaranteed Sanchez she would earn rental revenues on the properties that far exceeded the interest only mortgage payments—revenues Sanchez could use to fund her retirement.

19. Sadly, nearly everything Conaway told her was false. On information and belief, Conaway knew of no other potential buyers, nor were he and his wife interested in buying. The property was not in excellent condition, nor were all units rented. Additionally, the Rounkles Defendants were not assigning an interest-only mortgage on the properties—they would be lending directly to the buyer on a "wraparound" basis, using the buyer's loan payments to pay their existing mortgage.

20. To convince them to buy the Northwood Fourplexes, the Rounkles Defendants guaranteed Plaintiffs would receive rental income of at least $9,000 each month and assured them they would receive significantly more income in time, all while the properties would appreciate in value. In fact, before inking the deal, they presented Plaintiffs a *pro forma* indicating the monthly gross rental income from the properties would be $10,000. These representations were material to Plaintiffs because Plaintiffs had little other cash or income from which they could draw to make the promissory note payments.

21. In addition to these affirmative misrepresentations, Defendants also actively concealed important facts from Plaintiffs. For example, Defendants did not disclose that the transactional documents Plaintiffs signed when they bought the Northwood Fourplexes required them to hire the Rounkles Defendants to manage the

properties. Defendants failed to disclose and concealed the fact Conaway was not a licensed financial professional, or that he had been formally disciplined by FINRA for engaging in similar misconduct in the sale of real estate investments. Further, although the purchase documents stated that Plaintiffs had to hire Ranger Management to manage the properties, Defendants never disclosed to Plaintiffs that Rounkles owned and operated that company. On information and belief, Defendants concealed this clear conflict of interest so Plaintiffs would buy the properties.

22. Over time, Plaintiffs realized Defendants had sold them a bill of goods. The Northwood Fourplexes apparently were in deplorable condition and generated little revenue. Plaintiffs never received the income Defendants promised. In fact, they have received almost no rental income whatsoever from the properties. At the end of January 2022, Plaintiffs received a check for $1,702.29. The next month, they received a check for $4,958.09. Since then, they have received nothing. At no point have the Rounkles Defendants ever paid Plaintiffs the $9,000 per month they guaranteed, despite Plaintiffs' repeated demands.

23. Plaintiffs now know virtually everything Defendants told them was a lie. The Northwood Fourplexes were a scam. They were not a good investment, nor were other buyers interested. Defendants had no intention of abiding by their guarantees and representations about the guaranteed returns Plaintiffs would realize. Their only design was to steal from Sanchez, a retired grandmother with virtually no prior investment experience.

24. Plaintiffs discovered the Rounkles Defendants had positioned themselves to maximize their own profit at opportunity, while also retaining effective control over the venture after selling to Plaintiffs by requiring Plaintiffs to hire them to manage the properties. Plaintiffs also learned that the Conaway Defendants had received a substantial, illegal kickback commission for promoting and facilitating the deal. Had Defendants disclosed these clear conflicts of interest, Plaintiffs would have

steered clear of Conaway, Rounkles, and the Northwood Fourplexes, and invested Sanchez's retirement nest egg elsewhere.

25. When Plaintiffs approached Defendants to better understand why they were not receiving the income they promised, Defendants demurred and dissembled, urging patience and assuring Plaintiffs the properties would yield the income they were expecting to see. Defendants later promised Plaintiffs they would help secure a buyer for the properties, or even that Conaway and his wife themselves would purchase the properties. Defendants made those ongoing promises and representations from early 2021 through mid-2024 to further defraud Plaintiffs and prevent Sanchez from taking action. Eventually, however, Defendants stopped providing Plaintiffs any information about the properties' operations or finances.

26. Despite that Plaintiffs have not received any rental income since 2021, and that Defendants procured the entire investment transaction by fraud, the Rounkles Defendants continue to demand and collect promissory note payments and property management fees from Plaintiffs. In fact, RMPI sued Plaintiffs in Missouri state court to recover the full amount purportedly outstanding on the notes.

27. Defendants misrepresented the following facts, among others, knowing, or with reason to know, they were untrue, and with the intent to defraud Plaintiffs:

a. That Conaway was a duly licensed and registered investment adviser as of December 2021 and thereafter;

b. That Conaway was a duly licensed securities broker or registered representative of a FINRA member firm as of December 2021 and thereafter;

c. That several investors were interested in buying the Northwood Fourplexes as of December 2021, and time was of the essence to complete the purchase;

d. That Conaway and his wife were interested in buying the Northwood Fourplexes in December 2021;

e. That the Northwood Fourplexes were in good condition and would require little maintenance or upkeep as of December 2021;

f. That all units of the Northwood Fourplexes were under lease as of December 2021;

g. That the Northwood Fourplexes were a "special" investment opportunity with fundamentally sound finances as of December 2021;

h. That Conaway, in fact, believed or had reason to believe the Northwood Fourplexes were a "special" investment opportunity with fundamentally sound finances as of December 2021;

i. That the Northwood Fourplexes would be profitable for Plaintiffs;

j. That Plaintiffs would receive rental income of at least $10,000 per month after buying the Northwood Fourplexes;

k. That Defendants would ensure Plaintiffs rental income of at least $9,000 per month after Plaintiffs bought the Northwood Fourplexes;

l. That Plaintiffs would be assuming the Rounkles' Defendants' interest-only mortgage on the Northwood Fourplexes and would have no obligation to pay any principal;

m. That Defendants had found a buyer to purchase the Northwood Fourplexes from Plaintiffs; and

n. That the Conaway Defendants would buy the Northwood Fourplexes from Plaintiffs in 2022 and 2023.

28. Defendants further concealed from Plaintiffs the following critical facts, among others, which they knew, or had reason to know, were material to Plaintiffs, with the intent to defraud Plaintiffs:

a. That Conaway was not a duly licensed and registered investment adviser or investment adviser representative as of December 2021;

b. That Conaway was not a duly licensed and registered securities broker or registered representative of a FINRA member firm as of December 2021;

c. That FINRA had formally investigated and disciplined Conaway in 2018 because he had received undisclosed kickbacks for referring clients to a vendor selling distressed real estate in Missouri;

d. That USA Financial Securities Corporation terminated Conaway in 2016 based on the foregoing revelations;

e. That Conaway did not reinstate his licenses or otherwise secure employment with any other financial services firms;

f. That Conaway has an extensive history of ethical and compliance violations and customer complaints;

g. That the Northwood Fourplexes were a poor, fundamentally unsound investment as of December 2021;

h. That the Northwood Fourplexes required extensive upkeep as of December 2021;

i. That not all units of the Northwood Fourplexes were rented as of December 2021;

j. That the Northwood Fourplexes were not worth the price Plaintiffs paid for them in December 2021;

k. That the Rounkles Defendants would be financing the balance of the sale price of the Northwood Fourplexes directly on a wraparound basis, rather than assigning an existing, interest only mortgage to Plaintiffs;

l. That Rounkles owned, operated, and managed each of the entity Rounkles Defendants as of December 2021;

m. That Plaintiffs were unlikely to see rental income of $10,000 per month after buying the Northwood Fourplexes;

n. That the Rounkles Defendants would not abide, and had no intention of abiding, by their guarantee Plaintiffs would receive $9,000 in rental income each month after buying the Northwood Fourplexes; and

o. That the Northwood Fourplexes were unlikely to be profitable.

29. By knowingly participating in, and ratifying, the underlying fraudulent scheme and failing to take measures to protect Plaintiffs, as alleged above, Defendants acted with malice, oppression, and fraud within the meaning of California Civil Code section 3294. Punitive damages are thus warranted.

30. Plaintiffs bring this action to vindicate important rights affecting the public interest. Plaintiffs should not solely bear the financial burden of enforcing these important public rights, nor should the expense of enforcing them be debited against any monetary recovery by Plaintiffs. An award of attorneys' fees accordingly is appropriate under California Code of Civil Procedure section 1021.5, in addition to the statutes cited below.

## FIRST CAUSE OF ACTION

### USE OF MANIPULATIVE OR DECEPTIVE DEVICES IN CONNECTION WITH PURCHASE OR SALE OF SECURITIES

### (15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5)

### Against All Defendants

31. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

32. Defendants, acting in concert, manipulated and deceived Plaintiffs by making the false statements and intentionally failing to disclose the facts detailed above, knowing they were misleading, or with deliberate or reckless disregard for whether the statements they made were true.

33. In so doing, Defendants, individually and concertedly, directly and indirectly, by use of means or instruments of transportation or communication in interstate commerce, or by use of the mails, in connection with the purchase or sale of a

security, knowingly, willfully, or recklessly (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material facts and omitted to state material facts necessary to make the statements made not misleading; and (3) engaged in acts, practices, and courses of business that have operated, and will continue to operate, as a fraud or deceit upon Plaintiffs.

34. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and disclose the true facts to Plaintiffs, even though such facts were reasonably available to Defendants.

35. Plaintiffs actually and justifiably relied on Defendants' misrepresentations and omissions of material facts, as set forth herein, in executing and issuing the promissory notes securing the loans for the purchase the Northwood Fourplexes, which notes are "securities" under federal law, and in entering into the other agreements alleged herein. *See* 15 U.S.C. § 77b(a)(1).

36. By reason of the foregoing, Defendants directly and indirectly violated Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

37. As a direct and proximate result of these violations, Plaintiffs have suffered, and will continue to suffer damages in an amount to be proven. Plaintiffs further are entitled to rescission of the agreements pursuant to which they sold Defendants the subject securities, as well as the other relief requested herein.

## SECOND CAUSE OF ACTION

**PURCHASE OR SALE OF SECURITIES BY FALSE OR MISLEADING STATEMENTS OR OMISSIONS OF MATERIAL FACTS**

**(Cal. Corp. Code §§ 25401, 25501, 25504, and 25504.1)**

**Against All Defendants**

38. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

39. Defendants, and each of them, violated Section 25401 of the California Corporations Code by selling, purchasing, or offering to sell or purchase securities from Plaintiffs by means of written and oral communications that included untrue statements of material fact and omitted to state material facts necessary in order to make the statements made not misleading.

40. When Defendants made the misrepresentations and omissions, they knew, or, in the exercise of reasonable care, should have known, that the representations were false, misleading, and material. Defendants intended to deceive and defraud Plaintiffs through their misrepresentations and omissions as detailed herein.

41. The misrepresentations and omissions were material to Plaintiffs' decision to execute and issue the promissory notes securing the loans for purchase of the Northwood Fourplexes, which notes are "securities" under California law, and to enter into the other agreements alleged herein. *See* Cal. Corp. Code § 25019.

42. Plaintiffs actually and justifiably relied on Defendants' misrepresentations and omissions of material facts set forth herein in deciding to sell the securities described herein to Defendants.

43. Through their actions as alleged herein, each of the Defendants did materially, aid, abet, and assist each other Defendant in violation of Section 25401 of the California Corporations Code, each with the intent to deceive and defraud Plaintiffs. Under Section 25504.1 of the California Corporations Code, all Defendants are jointly and severally liable to Plaintiffs for violating Section 25401 of the same.

44. As a direct and proximate result of Defendants' violations, Plaintiffs have suffered damages in an amount to be proven at trial. In addition, Plaintiffs are entitled to rescission of the agreements pursuant to which they conveyed the subject securities. *See* Cal. Corp. Code § 25501.

/ / /

/ / /

**<u>THIRD CAUSE OF ACTION</u>**

**EFFECTUATION OR INDUCEMENT OF SECURITIES TRANSACTIONS**

**BY UNREGISTERED BROKER OR DEALER**

**(15 U.S.C. § 78o(a); 17 C.F.R. § 240.15a)**

**Against All Defendants**

45. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

46. Defendants, and each of them, effectuated or induced the securities transactions described herein.

47. Defendants were not licensed or registered with the SEC, FINRA, or any state or federal governmental agency of self-regulatory organization as a securities broker or dealer, nor were they affiliated persons of any other licensed or registered broker or dealer, at the time of the transactions at issue, or at any time thereafter.

48. By reason of the foregoing, Defendants directly and indirectly violated Section 15(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 15a. *See* 15 U.S.C. § 78o(a); 17 C.F.R. § 240.15a.

49. As a direct and proximate result of these violations, Plaintiffs have suffered, and will continue to suffer damages in an amount to be proven. Plaintiffs further are entitled to rescission of the agreements pursuant to which they sold Defendants the subject securities, as well as the other relief requested herein.

**<u>FOURTH CAUSE OF ACTION</u>**

**EFFECTUATION OR INDUCEMENT OF SECURITIES TRANSACTIONS**

**BY UNREGISTERED BROKER OR DEALER**

**(Cal. Corp. Code § 25210(a))**

**Against All Defendants**

50. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

51. Defendants, and each of them, effectuated or induced the securities transactions described herein.

52. Defendants were not licensed or registered with the SEC, FINRA, or any state or federal governmental agency of self-regulatory organization as a securities broker or dealer, nor were they affiliated persons of any other licensed or registered broker or dealer, at the time of the transactions at issue, or at any time thereafter.

53. By reason of the foregoing, Defendants directly and indirectly violated Section 25210(a) of the California Corporations Code.

54. As a direct and proximate result of these violations, Plaintiffs have suffered, and will continue to suffer damages in an amount to be proven. Plaintiffs further are entitled to rescission of the agreements pursuant to which they sold Defendants the subject securities, as well as the other relief requested herein.

## FIFTH CAUSE OF ACTION

### FINANCIAL ELDER ABUSE

### (Cal. Welf. & Inst. Code § 15610.30)

### Against All Defendants

55. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

56. Plaintiff Sanchez is and, at all relevant times, was an "elder" under California law. *See* Cal. Welf. & Inst. Code § 15610.27.

57. As described herein, Defendants, and each of them, took, appropriated, obtained, and retained Plaintiffs' property, or assisted in taking, appropriating, obtaining, and retaining Plaintiffs' property, and did so for a wrongful use, with the intent to defraud Plaintiffs, and through the exertion of undue influence.

58. As a direct and proximate result of Defendants' financial abuse, Plaintiffs have suffered, and will continue to suffer, harm as alleged herein.

59. For these violations, Plaintiffs are entitled to compensatory, treble, and punitive damages, attorneys' fees, and costs of suit.

## SIXTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

### (Cal. Bus. & Prof. Code § 17200)

### Against All Defendants

60. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

61. As alleged above, Defendants have engaged, and continue to engage in, unfair business practices. These unfair business practices violate the California Unfair Competition Law. If not stopped, Plaintiffs and other Californians will continue to suffer harm as a result of these practices by Defendants.

62. Based on these violations, Plaintiffs are entitled to all restitution in an amount to be determined, as well as the equitable relief referenced below. Plaintiffs further may recover reasonable attorneys' fees and costs. *See* Cal Code Civ. Proc. 1021.5.

## SEVENTH CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

### Against All Defendants

63. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

64. As alleged herein, Defendants, while acting in the course and scope of their duties as agents and principals of one another, intentionally and knowingly made a number of direct and indirect misrepresentations that were false, misleading, and material. Defendants knew the statements were material, false, and misleading, and they owed a duty to Plaintiffs to disclose the true nature of these representations but failed to do so.

65. In making the misrepresentations alleged herein, Defendants intended to deceive and defraud Plaintiffs and induce them to sell the subject securities. Defendants' misrepresentations were material to Plaintiffs' decisions to sell the subject

securities and Plaintiffs, actually, reasonably, and justifiably relied on the misrepresentations in connection with their investment decisions.

66. Had Defendants not made the misrepresentations detailed herein, Plaintiffs would not have sold the subject securities.

67. Defendants made the misrepresentations alleged herein while acting in the course and scope of their duties as agents and principals of one another and with the knowledge and express or implied ratification of one another.

68. Plaintiffs have suffered, and continue to suffer, damages as a result of Defendants' misrepresentations, including, but not limited to, the loss of substantial investment returns.

## EIGHTH CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

### Against All Defendants

69. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

70. As alleged herein, Defendants, while acting in the course and scope of their duties as agents and principals of one another, intentionally concealed from Plaintiffs the material facts described above.

71. Defendants knew, or reasonably should have known, the foregoing material facts, and were under a duty to disclose them to Plaintiffs. Defendants owed a duty to disclose this and other material information concerning the value of the subject securities and information about the Northwood Fourplexes because they were known to Defendants, but not accessible to Plaintiffs. Finally, as described herein, the information Defendants withheld made the statements they made actionable "half-truths" for which Defendants are liable.

72. Defendants withheld and concealed the foregoing material facts while acting in the course and scope of their duties as agents and principals of one another and with the knowledge and express or implied ratification of one another.

73. Had Defendants not concealed the foregoing facts, Plaintiffs would not have sold the subject securities to them.

74. Defendants' concealment was intentional and malicious and done with the intent to induce Plaintiffs to purchase the Northwood Fourplexes, execute and issue the promissory notes, and otherwise part with their money and assets for purposes of making and maintaining the subject investment.

75. Plaintiffs have suffered, and continue to suffer, damages as a result of Defendants' fraudulent concealments, including, but not limited to, the loss of substantial investment returns.

76. Defendants' actions were intentional, fraudulent, willful, wanton, malicious, oppressive, and reckless, warranting punitive damages.

## NINTH CAUSE OF ACTION

### FRAUDULENT INDUCEMENT

### Against All Defendants

77. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

78. As alleged herein, Defendants, while acting in the course and scope of their duties as agents and principals of one another, intentionally misrepresented and concealed from Plaintiffs the material facts described above.

79. Defendants misrepresented and concealed the foregoing material facts while acting in the course and scope of their duties as agents and principals of one another and with the knowledge and express or implied ratification of one another.

80. Defendants withheld and concealed the foregoing material facts for the purpose of inducing Plaintiffs to enter into the agreements alleged herein.

81. Had Defendants not concealed the foregoing facts, Plaintiffs would not have entered into said agreements.

82. Plaintiffs have suffered, and continue to suffer, damages as a result of Defendants' fraudulent misrepresentations and concealments, including, but not limited to, the loss of substantial investment returns.

83. Defendants' actions were intentional, fraudulent, willful, wanton, malicious, oppressive, and reckless, warranting punitive damages.

84. In addition to the damages they seek, Plaintiffs are entitled to rescission of the agreements alleged herein.

## TENTH CAUSE OF ACTION

### BREACH OF CONTRACT—RENTAL INCOME GUARANTEE

### Against Rounkles Defendants

85. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

86. The Rounkles Defendants guaranteed, in writing and orally, Plaintiffs would receive monthly rents of at least $9,000 after purchasing the Northwood Fourplexes, and that promise was the primary reason Plaintiffs purchased the Northwood Fourplexes.

87. After Plaintiffs purchased the Northwood Fourplexes, they failed to yield the specified rents. The Rounkles Defendants, however, refused to abide by their guarantee.

88. As a direct and proximate result of the Rounkles Defendants' breach of the rental income guarantee, Plaintiffs did not receive the rental income the Rounkles Defendants guaranteed them.

## ELEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT—PROPERTY MANAGEMENT AGREEMENT

### Against Ranger Management

89. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

90. Plaintiffs entered into a written agreement for Ranger Management to act as the property manager for the Northwood Fourplexes in exchange for Plaintiffs paying a per-unit monthly fee. That agreement included, among other things, implicit covenants that Ranger Management would (i) exercise reasonable care in the discharge of its contractual duties; and (ii) act in good faith and deal fairly with Plaintiffs in performing its contractual duties.

91. Plaintiffs performed their obligations under the property management agreement by remitting payment as required to Ranger Management.

92. Ranger Management breached its duties under the property management agreement by, among other things, (i) failing to adequately and reasonably manage the Northwood Fourplexes; (ii) failing to exercise due diligence and reasonable efforts to lease units in the Northwood Fourplexes; (iii) failing to keep Plaintiffs reasonably apprised of the operations and financial status of the Northwood Fourplexes; (iv) mismanaging the finances of the Northwood Fourplexes; and (v) failing to provide documents and information to Plaintiffs relating to the management of the Northwood Fourplexes.

93. As a direct and proximate result of Ranger Management's breaches of the property management agreement, Plaintiffs have lost substantial rental income, and the Northwood Fourplexes are now worth significantly less than Plaintiffs paid for them.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Alicia Sanchez and CIAM LLC ask this Court to:

1. Award them compensatory damages in an amount to be proven at trial;
2. Award them punitive damages in an amount to be proven at trial;
3. Award them treble damages;
4. Award them their attorneys' fees and costs of suit;

5. Enter monetary penalties as appropriate against Defendants;

6. Enter an Order and Judgment requiring disgorgement of all profits Defendants have received as a result of the subject misconduct;

7. Enter an Order and Judgment directing Defendants to make restitution to Plaintiffs in an amount to be proven at trial;

8. Enter an Order and Judgment requiring an accounting by an independent third party of all amounts credited and debited to Plaintiffs and Defendants in relation to the management and operation of the Northwood Fourplexes, including, but not limited to, all rents received and all management costs and fees paid;

9. Enter an Order and Judgment rescinding Plaintiffs' purchase of the Northwood Fourplexes and all related transactions, and directing the return of all funds Plaintiffs paid for the purchase of the Northwood Fourplexes;

10. Enter an Order and Judgment declaring the promissory notes issued by Plaintiffs to the Rounkles Defendants null, void, and unenforceable;

11. Enter an Order and Judgment prohibiting Defendants, and each of them, from enforcing said promissory notes or any other contract or agreement relating to Plaintiffs' purchase of the Northwood Fourplexes; and

12. Such other and further relief as the Court deems appropriate.

DATED: March 31, 2025

SHUSTAK REYNOLDS & PARTNERS, P.C.

/s/ George C. Miller

George C. Miller, Esq.
Joseph M. Mellano, Esq.
*Attorneys for Plaintiffs Alicia Sanchez and CIAM LLC*